UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ST. PAUL CATHEDRAL
SCHOOL,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

NO. CV-07-3021-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Ct. Rec. 26). A hearing on this motion was held on October 22, 2008. Kevan Montoya appeared on behalf of Plaintiff; Jennifer Auchterlonie appeared on behalf of Defendant.

Plaintiff seeks a refund of penalties the IRS collected from Plaintiff for failure to: (1) make timely deposits towards its liabilities for federal employment taxes; (2) timely pay those liabilities; and (3) timely file federal employment tax returns. Plaintiff does not dispute these failures; rather, Plaintiff asserts an affirmative defense provided by statute, arguing that Plaintiff is entitled to a refund because the failures were "due to reasonable cause and not due to willful neglect."

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** * 1

26 U.S.C. §§ 6651(a)(1), (2), and 6656(a).[1] Plaintiff's argument was unsuccessful at the administrative level; Plaintiff's final appeal was denied on November 14, 2006, and this suit followed.

Now Defendant moves the Court to find as a matter of law that Plaintiff is not entitled to the refund it seeks. In response, Plaintiff submits a number of declarations and other evidence, asking the Court to find that a genuine issue of material fact exists as to whether the failures were due to reasonable cause. Defendant moves to strike some of Plaintiff's proffered evidence and arguments on various procedural grounds.

## I.  Facts

Unless otherwise noted, the following facts are undisputed.

Plaintiff is a private, nonprofit Catholic school that is part of St. Paul Cathedral Parish in Yakima, Washington. During the quarterly periods beginning October 1, 2003, and ending June 30, 2005, Plaintiff failed to timely file federal employment tax returns and failed to make timely deposits and to timely pay its federal employment tax liabilities. As a result, the IRS assessed a total of $90,444.74 in penalties against Plaintiff.

During all relevant periods, Plaintiff employed a bookkeeper named Sandra Page, who was responsible for financial duties including paying employment taxes

---

[1] Plaintiff's Complaint also argues that "the IRS should treat St. Paul the same as public schools and governmental entities for which the IRS will waive penalties under 26 C.F.R. § 301.6651-1(c)(1) if the entity exercised ordinary business care and prudence." Compl., ¶ 9. Plaintiff did not further develop or even mention this argument in its briefing responding to the Motion for Summary Judgment. The cited regulation merely sets forth the standard for showing reasonable cause, but does not set forth any different standard for public schools or governmental entities.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 2

1  and filing tax returns. Sometime after her hiring, her supervisors were informed of
2  a criminal case against Ms. Page, but took no action because they believed the
3  allegation to be unsubstantiated. Unknown to her employers, Ms. Page had a
4  number of convictions for theft and forgery, including one conviction that occurred
5  during her employment with Plaintiff. During the discovery phase of this litigation,
6  Plaintiff hired a forensic accountant who reports that Ms. Page misappropriated
7  $240,049.18 during her five years of employment with Plaintiff. Ms. Page's
8  employment was terminated on March 20, 2008.

9      Ms. Page's direct supervisor was the principal of the school, a position filled
10  by two different individuals during the periods at issue. Sister Tonia Wanecek was
11  principal until July 2004[2]; Anne Berg was principal through the rest of the relevant
12  period. Among other duties, the principals oversaw Ms. Page's work; however,
13  Ms. Page was left solely responsible for the bookkeeping, preparation of financial
14  reports, withholding taxes, and filing appropriate tax returns. The school also had
15  help from a volunteer Certified Public Accountant named Chris Rivard, who
16  worked closely with Ms. Page and had access to all of Plaintiff's accounting
17  records. Mr. Rivard is the accountant for the Diocese of Yakima, of which Plaintiff
18  is a part. Plaintiff's financial status was also reviewed regularly by both the
19  Diocese and a school finance committee.

20      The principals were hired by and reported to Monsignor John A. Ecker, the
21  Pastor of St. Paul Cathedral Parish. The parties dispute the scope of Msgr. Ecker's
22

23      [2] Plaintiff proffers evidence that Sr. Tonia struggled with fibromyalgia,
24  making it difficult for her to perform her job duties and causing her to be less
25  visible to her staff. However, the record establishes that despite Sr. Tonia's health
26  difficulties, she continued to meet regularly with her superior regarding Plaintiff's
27  financial status, and Plaintiff continued to operate normally throughout the relevant
28  periods.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** * 3

duties as Pastor, though both parties acknowledge that Msgr. Ecker "oversees" Plaintiff. Plaintiff states that Msgr. Ecker merely ensures that "the Cathedral and [Plaintiff] are operating within the doctrine of the Catholic Church," but "does not oversee the day-to-day operation of [Plaintiff]" (Plaintiff's Statement of Facts, ¶ 4).[3] Defendant maintains that Msgr. Ecker "has ultimate decision-making authority on all matters with respect to [Plaintiff]" and "was responsible for overseeing the administration of [Plaintiff]... including financial issues" (Defendant's Statement of Facts, ¶¶ 3, 4). Regardless of this dispute, Msgr. Ecker's own declaration establishes that during the relevant periods he oversaw the financial health and status of the school, and regularly discussed those topics with both principals, Ms. Page, and even Mr. Rivard.

The parties also dispute Plaintiff's financial health during the periods in question. Defendant maintains that Plaintiff had multiple bank accounts that were well in the black during all relevant periods. Plaintiff cites its forensic accountant's calculations that, at best, Plaintiff would have ran out of money by March 2005 had it actually paid the taxes at issue.[4]

## II.  Standard of Review

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3) the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

---

[3] This characterization of Msgr. Ecker's duties is the subject of one of Defendant's requests to strike.

[4] These calculations are the subject of another of Defendant's motions to strike.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 4

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is determined by the substantive law regarding the legal elements of a claim. *Id.* at 248. If a fact will affect the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248.

The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In accord with Rules of Civil Procedure 56(e), a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Summary judgment is appropriate only when the facts are fully developed and the issues clearly presented. *Anderson v. American Auto. Ass'n*, 454 F.2d 1240, 1242 (9th Cir. 1972). "Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In the context of determining the existence of "reasonable cause" under 26 U.S.C. §§ 6651(a)(1), (2), and 6656(a), "what elements constitute reasonable cause is a question of law; whether those elements are present is a question of fact." *Conklin Bros. v. United States*, 986 F.2d 315, 317 (9th Cir. 1993) (citing *United States v. Boyle*, 469 U.S. 241, 249 n.8 (1985)).

### III.  Analysis

Defendant asserts a number of procedural challenges to the evidence and arguments set forth in Plaintiff's response to the motion for summary judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 5

For the purposes of this analysis, the Court will assume that Plaintiff should prevail on each of those challenges. Thus, the Court will consider all evidence proffered by Plaintiff and all arguments articulated in Plaintiff's response.

The tax code provides taxpayers with an affirmative defense to the assessment of penalties: taxpayers may excuse the failure to file a tax return or to pay tax by showing "that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1). Treasury regulations interpreting this language provide:

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship...if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.

26 C.F.R. § 301.6651-1(c)(1).

26 C.F.R. § 301.6651-1(c)(1) sets forth a threshold requirement and then two prongs of the reasonable cause inquiry. First, a taxpayer must show that it exercised ordinary business care. Second, the taxpayer may excuse its failure to pay by showing either: (1) the taxpayer was unable to pay the tax; or (2) the taxpayer would suffer an undue hardship by paying the tax on the due date.

The Court finds that Plaintiff satisfied the threshold requirement by exercising ordinary business care. Given the budgetary challenges Plaintiff faced, it may well have been reasonable to delegate to Ms. Page the sole responsibility for withholding taxes and filing tax returns. However, while that decision may have been reasonable as a corporate matter, "it does not resolve the matter as to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT * 6**

1    [Plaintiff's] tax duties." *Conklin Bros.*, 986 F.2d at 317, 318-19. Thus, the Court

2    must determine whether a triable issue of fact exists with respect to the second two

3    prongs of the test.

*A. Disability*

5        The duty to pay taxes is placed firmly on the taxpayer and is nondelegable; a

6    taxpayer may not escape liability by relying on an agent to fulfill the taxpayer's

7    obligations. *Boyle*, 469 U.S. at 249-50. However, where a taxpayer is effectively

8    disabled from fulfilling its obligations because of "circumstances beyond [its]

9    control," the taxpayer may well excuse its failure to comply. *Id.* at 248 n. 6.

10       The *Boyle* court described the showing required to establish reasonable

11   cause as a "heavy burden"; the Ninth Circuit has instructed that the reasonable

12   cause defense "is viewed very narrowly." *Conklin Bros.*, 986 F.2d at 317. Indeed,

13   the Court finds only one case in which a corporate taxpayer's failure to comply

14   was excused due to disability: *In re Am. Biomaterials Corp.*, 954 F.2d 919, 921,

15   928 (3rd Cir. 1992).[5] The *Biomaterials* court found reasonable cause where

16   criminal embezzlement by a CEO and CFO/Treasurer effectively incapacitated a

17   corporation and rendered it unable to fulfill its tax obligations. 954 F.2d at 927-28.

18       The Ninth Circuit has seemingly accepted *Biomaterials* as good law, while

19   carefully distinguishing it from a slightly different set of facts. *See Conklin Bros.*,

20   986 F.2d at 318. In *Conklin Bros.*, an accounts payable clerk was promoted to

21   office manager/controller and placed in charge of fulfilling a corporation's tax

22   obligations. *Id.* at 315. Later, the president/majority shareholder of the corporation

23   and the corporation's outside accountants determined that "close supervision and

24   review of [her] payroll tax related duties were no longer necessary." *Id.* at 316. Her

26       [5]*See also A Better Plumbing Service, Inc. v. United States*, 533 F. Supp. 2d

27   1233, 1240 (N.D. Ga. 2008) (citing *Biomaterials* as the single Circuit Court

28   opinion finding reasonable cause after *Boyle*).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 7

1  deficient and improper conduct eventually led to the assessment of IRS penalties.

2  *Id.* The Ninth Circuit distinguished *Biomaterials* from the facts before the court,

3  noting that the instant office manager's conduct "was not largely beyond Conklin's

4  control," while the *Biomaterials* corporation could not supervise the embezzling

5  officers because they were "the control people in the corporate structure." *Id.* at

6  318. Though it may have been "reasonable" to rely on the office manager to fulfill

7  her duties, that reasonable reliance did not excuse Conklin's failure to fulfill its

8  nondelegable tax obligations. *Id.* at 318-19.

9      The Sixth Circuit reached a similar result in *Valen Mfg. Co. v. United States*,

10  90 F.3d 1190 (6th Cir. 1996). There, despite multiple layers of oversight, an office

11  manager/bookkeeper failed to file returns and pay taxes, and concealed her failures

12  from her supervisors. *Id.* at 1191. Because the "executive officers of the company

13  did retain both oversight of [the bookkeeper's] work and ultimate responsibilities

14  for tax liabilities," the court held that the taxpayer was not disabled. *Id.* at 1194.

15  The court also found it relevant that the taxpayer, like Plaintiff here, was able to

16  pay the taxes and penalties immediately upon discovering they were due. *Id.* at

17  1193.

18      Numerous district courts confronted with facts similar to the case at bar have

19  declined to find disability. *See, e.g., Better Plumbing*, 533 F. Supp. at 1242-43

20  (finding no disability where the derelict employee "was not the only person

21  capable of acting" for the taxpayer in fulfilling its tax obligations, and the

22  employee was expected to report to the corporation's president if the corporation

23  could not pay its tax obligations); *Dogwood Forest Rest Home, Inc. v. United*

24  *States*, 181 F. Supp. 2d 554, 561 (M.D. N.C. 2001) ("A corporation is not disabled

25  from complying with tax deadlines if it retains control over the agent responsible

26  for tax liabilities."); *Atlas Therapy*, 66 F. Supp. at 1208 (finding that "misconduct

27  by a corporate officer or employee who is susceptible to the control of higher-level

28  managers is not sufficient cause to abate the company's tax penalties," and thus a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 8

corporate taxpayer who "always retained the authority to oversee [the employee] and ensure that the taxes were paid" was not disabled); *Mason Motors Co. v. United States*, 8 F. Supp. 1177, 1181 (D. Minn. 1998) (finding no reasonable cause where the failure to pay was due to a "disloyal, deceitful employee who was not acting within the scope of her employment," but "the corporation's officer retained ultimate control over the corporation's tax obligations").

Here, Plaintiff acknowledges the holding and reasoning of *Conklin Bros.*, but argues that because of limited funds and consolidation of duties in one individual, Ms. Page should be considered equivalent to a CFO with the capacity to disable a corporation. To the contrary, the Court finds that Ms. Page simply did not occupy a position of authority comparable to the officers in *Biomaterials*. The record establishes that while Ms. Page may have been something more than a garden variety bookkeeper, she was something less than a CFO. Although she was given the sole responsibility for paying taxes and keeping the books, she was not in charge of Plaintiff's financial affairs in general. She did not participate in financial planning or policy development. For example, she had no role in the decision whether to raise tuition, a decision that was made by Ms. Page's two supervisors: the principal and Msgr. Ecker. The record establishes that Ms. Page was subject to the constant oversight of the principals, the frequent (multiple times a week) oversight of Msgr. Ecker, and the regular oversight of Mr. Rivard. Further, the school's financial affairs were reviewed at least quarterly by a finance committee and the Diocese. Importantly, each of these levels of oversight *could have* (i.e., retained the authority to have) specifically checked Ms. Page's payment of payroll taxes, but chose not to.

Plaintiff argues that Sr. Tonia's illness inhibited her from properly fulfilling her duties as principal, and that her consequently deficient oversight of Ms. Page at least creates a genuine issue of material fact with respect to Plaintiff's disability. "It is clear that a taxpayer's serious illness can constitute reasonable cause under 26

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 9

C.F.R. § 301.6651-1(c)(1)." *Van Camp & Bennion v. United States,* 251 F.3d 862, 867 (9th Cir. 2001). However, the record (both Msgr. Ecker's declaration and his deposition testimony) establishes that Sr. Tonia continued to perform the essential functions of her job, including overseeing Ms. Page and meeting with Msgr. Ecker regarding the school's financial status. The Court finds those circumstances insufficient to disable Plaintiff as a matter of law.

Plaintiff also suggests that Msgr. Ecker's oversight role was fairly limited, and thus that he should not be considered to have provided the same level of supervision as the controllers in *Conklin Bros.* That argument is belied by Msgr. Ecker's own declaration, which establishes that Msgr. Ecker directly oversaw Plaintiff's finances. He had weekly meetings with Plaintiff's principals in which Plaintiff's financial condition was at issue; he discussed Plaintiff's financial condition with Ms. Page; he discussed Plaintiff's financial condition with the Diocese's CPA.

These undisputed facts place this case squarely within the holdings of *Conklin Bros.* and *Valen Mfg.* Accordingly, the Court must find that Plaintiff has failed to show it was disabled from complying with its tax obligations.

### B. Undue Hardship

Alternatively, Plaintiff may excuse its failure to pay if payment would result in an undue hardship. The Treasury Regulations set a high bar for undue hardship:

> The term "undue hardship" means more than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date of the amount with respect to which the extension is desired. If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

26 C.F.R. § 1.6161-1(b). "Evidence of financial trouble, without more, is not enough" to establish undue hardship. *Synergy Staffing, Inc. v. United States*, 323

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 10

F.3d 1157, 1160 (9th Cir. 2003).[6] A taxpayer seeking refund of penalties must "come forward with evidence of what funds it *did* have on hand each time a payroll tax was due," and "produce evidence of how it spent those funds in lieu of paying its taxes." *Id.* However, financial difficulties as substantial as "the potential ruin of a corporation" may constitute reasonable cause. *Van Camp*, 251 F.3d at 868.

*Synergy*, the text of the quoted regulations, and case law from other circuits all suggest that the touchstone here is the reasonableness of the taxpayer's decision not to pay at the time the tax was due. In other words: has the taxpayer provided sufficient evidence to establish that its decision not to pay the tax because of financial difficulties was reasonable? The Court finds only one reported case in which that question was answered in the affirmative: *East Wind Indus. v. United States*, 196 F.3d 499, 507 (3d Cir. 1999). There, a taxpayer who depended on government contracting as its sole revenue stream failed to pay withholding taxes due to financial difficulties caused by bribes solicited by corrupt government employees, which ultimately accounted for up to 50% of the taxpayer's business. *Id.* at 502. The taxpayer chose to pay only its employees and those creditors whose services were essential to the taxpayer's survival. *Id.* at 509. Under these

---

[6]Note that the Sixth Circuit has adopted a bright line rule that "financial difficulties can never constitute reasonable cause to excuse the penalties for nonpayment of withholding taxes by an employer." *Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994). The Second Circuit declined to adopt this bright line rule, but did note that a taxpayer seeking to avoid penalties must provide evidence showing in what order it placed the IRS among its creditors. *See Fran Corp. v. United States*, 164 F.3d 814, 818-21 (2d Cir. 1999). The Third and Ninth Circuits have similarly rejected *Brewery*'s rule and adopted the reasoning of *Fran*. *East Wind Indus. v. United States*, 196 F.3d 499, 508 (3d Cir. 1999); *Van Camp & Bennion v. United States*, 251 F.3d 862, 868 (9th Cir. 2001).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** * 11

1  circumstances, the court held that the taxpayer would have suffered an undue

2  hardship by paying its taxes on the dates they were due. *Id.* at 509-510.

3        Note that even the taxpayer in *East Wind*, who was excused from paying

4  penalties, continued to file tax returns during all the periods in question. *Id.* at 501.

5  *See also Fran Corp. v. United States*, 164 F.3d 814, 816 n. 5 (2d Cir. 1999) (noting

6  that financial difficulties would not provide reasonable cause to avoid timely filing

7  tax returns); *Pacific Wallboard & Plaster Co. v. United States*, 319 F. Supp. 2d

8  1187, 1190 (D. Or. 2004) (finding no undue hardship where a taxpayer "simply

9  ignored its tax obligations for three whole years").

10        Here, Plaintiff does not argue that because of financial difficulties, Plaintiff

11  consciously chose not pay its taxes but to instead use those funds to pay other

12  creditors. Rather, Plaintiff has simply proffered evidence that it was in financial

13  trouble, "losing money at an alarming rate during the time it was not making its tax

14  payments" (Plaintiff's Memorandum in Opposition to United States' Motion for

15  Summary Judgment, p. 17, ln. 1-2).

16        The Court finds that Plaintiff has failed to create a triable issue of fact

17  regarding undue hardship. Plaintiff does not attempt to justify any decision to pay

18  other creditors before the IRS; in fact, the evidence establishes that no such

19  conscious decision was made. Due to the business decision not to closely supervise

20  Ms. Page, the individuals in Plaintiff's supervisory positions were simply unaware

21  that taxes were due and not being paid. Moreover, Plaintiff has failed to contradict

22  the evidence that Plaintiff had three checking accounts with tens of thousands of

23  dollars available during all the relevant periods, not to mention access to a savings

24  account containing over $200,000. Accordingly, Plaintiff has not shown that it

25  would have suffered an undue hardship by paying its taxes at the time they were

26  due.

27

28

## IV. Conclusion

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** * 12

Plaintiff has established that it exercised ordinary business care and that its failure to fulfill its tax obligations was not due to willful neglect. However, the undisputed facts establish that Plaintiff was not disabled from complying with its obligations, and that it would not have suffered an undue hardship if it had paid its taxes when they were due.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's Motion for Summary Judgment (Ct. Rec. 26) is **GRANTED**.

2.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 5th day of December, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2007\St. Paul Cathedral School\grant.SJ.ord.wpd

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT * 13**